287 So.2d 544 (1973)
BROUSSARD, BROUSSARD & MORESI, LTD. (A Law Corporation), Plaintiff-Appellant,
v.
STATE AUTO & CASUALTY UNDERWRITERS COMPANY, Defendant-Appellee.
No. 4363.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
Writ Refused March 15, 1974.
*545 Broussard, Broussard & Moresi, Marcus A. Broussard, Jr., Abbeville, for plaintiffappellant.
Joel E. Gooch, Lafayette, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
The trial court sustained defendant State Auto & Casualty Underwriters Company's exception of no cause of action. Plaintiff Broussard, Broussard & Moresi, Ltd. (A Law Corporation) appeals. We reverse and remand.
The sole issue is whether Broussard's petition states a claim entitling it to relief under the laws of this state. We must decide whether counsel (for an employee who has received workmen's compensation) after having successfully represented an employee in a tort action against a negligent third party, is entitled to collect attorney fees (for services rendered by Broussard, Ltd. which resulted in State Auto recovering its payment to the employee) from the workmen's compensation insurer which intervened in the tort action.
To determine whether Broussard, Ltd.'s petition states a cause of action, we accept the allegations contained within the petition as proved.
Broussard, Ltd. alleges that it represented Joseph L. DuBois in a suit against H. E. Megison, et al. in which a recovery of $13,000 was allowed. Broussard, Ltd. had represented DuBois in the tort action under a contingent fee arrangement of 331/3% of the recovery. State Auto intervened in the tort action and received the $7,336.16 it had paid to DuBois as compensation benefits. Thus DuBois' recovery was reduced to $5,663.84, and Broussard, Ltd.'s fee was reduced to $1,887.95. Broussard, Ltd. also alleges the existence of expenses incurred in the litigation which benefited State Auto but which have not been reimbursed. The petition states:
V.
That as a result of the efforts of Plaintiff in this matter, the claim of Mr. DuBois and the intervention of STATE AUTO & CASUALTY UNDERWRITERS COMPANY were allowed and as a result of the efforts of Plaintiff, *546 STATE AUTO & CASUALTY UNDERWRITERS COMPANY was awarded and has collected the said sum of $7336.16.
VI.
That not only was the result obtained through the efforts of Plaintiff, but all expenses incurred were paid by Plaintiff and Mr. DuBois, none of which were paid or shared in by Defendant, and for many of which Plaintiff has never been reimbursed by anyone, all of which will be shown on the trial hereof.
VII.
That through the efforts of Plaintiff, STATE AUTO & CASUALTY UNDERWRITERS COMPANY was enriched by the amount of $7336.16 and that it would constitute unjust enrichment for the said Defendant to accept the benefit of the work of Plaintiff without paying for the same.
Broussard, Ltd.'s petition is based upon a theory of unjust enrichment. Other portions of the petition alternatively base the claim on the "Fund Doctrine". The trial court reasoned that neither unjust enrichment nor the "Fund Doctrine" applied since recovery in the tort action was sufficient to pay both Broussard, Ltd. and State Auto.
Does the Louisiana Workmen's Compensation Act preclude the existence of a remedy for Broussard, Ltd. under the circumstances alleged in its petition? If not, does Broussard, Ltd. allege facts which could entitle it do relief under the "Fund Doctrine" or under a theory of quantum meruit?
LSA-R.S. 23:1101 authorizes an employee who has received an injury compensable under workmen's compensation to proceed against a third party who may be legally responsible for the injury incurred. This section likewise authorizes the employer to proceed against the third person for recovery of compensation paid. Section 1102 allows either employee or employer to intervene in a suit filed by the other for recovery of damages as allowed in section 1101. Section 1103 provides for apportionment of these damages. Under this section the employee may recover only the sum in excess of compensation paid by the employer.
The reference to attorney's fees (which allowed the employer "a reasonable attorney's fee and his costs") was deleted by Act 109 of 1958, § 1. The 1958 act does not specifically disallow recovery of attorney's fees in an action instituted by an attorney retained by the employee against an intervening employer or insurer.
The trial court relied upon Louisiana jurisprudence which raised similar issues, but prior to the 1958 amendment. Hudson v. Union Indemnity Co., 9 La.App. 257, 119 So. 462 (1 Cir. 1928); Meyers v. Southwest Region Conference Ass'n, 91 So.2d 106 (Orl.La.App.1957).
The instant case differs in significant aspects from these cases. The posture of the parties in this case is of primary significance, and the 1958 amendment to LSA-R.S. 23:1103, removing allowances to the employer of attorney's fees, negatives the inference that the employer is in a preferred status as to attorney's fees.
The attorney is here seeking compensation for a benefit he has created in behalf of an insurer. The workmen's compensation act does not specifically or inferentially deny the existence of this remedy. Such a remedy does not do violence to the set of statutory relationships created by the legislature to implement the compensation scheme.
This remedy would not significantly disrupt the employer-employee-third party relationship envisioned in LSA-R.S. 23:1101-1103. The employee would still be allowed recovery of all that he is entitled to under compensation as well as the excess recovery in his third party action. The employer *547 or his insurer would still be entitled to intervene and receive from the third party the amount of compensation it has paid the injured employee. It does not allow the employee payment of his attorney's fees for his prosecution of the action against the third party. It merely requires the employer or his insurer to contribute just compensation for the relief he has obtained in the intervention where he has benefited by another's action to obtain that relief.
Such a remedy would add nothing to the ultimate recovery of the injured employee. The recognition of such a remedy would likewise mean no reduction in the amount recoverable by the intervening employer or insurer unless the employer could otherwise avoid paying attorney fees. It would still be incumbent upon each party to retain and compensate his own attorney for the prosecution of the relief sought. It is only where one of the parties has benefited by its inaction that some adjustment would be allowable. Such an adjustment would not vary the compensation scheme. It would merely require litigants who use the courts to obtain relief afforded by law to bear some of the costs. It might benefit the employee in that it could allow him to litigate what might otherwise be a marginal claim (as to him) against the third party tort feasor.
Prior to 1958, the employer was statutorily authorized in an employee's third party suit to intervene not only for compensation already paid, but also for reasonable attorney's fees and costs. This provision had the effect of allowing the employer to intervene and recover not only the compensation already paid, but also his attorney's fees in that intervention. No similar provision, than or now, allowed recovery of attorney's fees to the employee against either the third party or the employer. The employee was thus required to absorb both his and his employer's attorney's fees in the third party action. The 1958 amendment relieved the employee of this burden. We do not interpret the 1958 amendment as authorization for the employer to suffer an automatic reduction in his intervention for payment of fees to the employee's attorney. The amendment intended that both employer and employee were to suffer their own attorney's fees and costs in the prosecution of their demands, as do all other litigants seeking recovery where attorney's fees are not statutorily authorized. The removal of the language pertaining to attorney's fees in the 1958 amendment leaves the Workmen's Compensation Act silent in regard to the subject matter of this suit.
Since the Compensation Act presents no obstacle to plaintiff's demand, we now consider whether the petition states a cause of action entitling it to proceed to a trial on the merits.
As a general rule, our courts have recognized that the right of an attorney to collect fees is based upon contract, regardless of the value and benefit others have derived from his services. Succession of Guichard, 225 La. 315, 72 So.2d 744 (1954); Succession of Russell, 208 La. 213, 23 So.2d 50 (1945). There is an exception to that rule. Louisiana State Mineral Board v. Albarado, 248 La. 551, 180 So.2d 700 (1965); In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958); Louisiana State Mineral Board v. Abadie, 164 So.2d 159 (La.App. 1 Cir. 1964).
We pretermit consideration of the Fund Doctrine as expressed in In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958).

Quantum Meruit
Considerations inherent in the terms quantum meruit, quasi-contract, and unjust enrichment have much in common with LSA-C.C. article 1965's "moral maxim of the law that no one ought to enrich himself at the expense of another." Louisiana courts have long recognized recovery under the common law theory of quantum *548 meruit. Dunbar v. Butler, 2 Rob. 32 (1842); numerous other cases cited at note, 24 Tul.L.R. 141, 144 (1949); and Unjustified Enrichment in Civil Law and Louisiana Law, 37 Tul.L.R. 49 (1962). Our Civil Code specifically recognizes the existence of obligations based upon quasi contract. LSA-C.C. Articles 2293-2314.
If a distinction exists between the necessary elements of a cause of action in quantum meruit and one in quasi contract, this distinction has long been clouded by repeated interchangeable references to both theories when describing a set of operative facts which constitute a cause of action. See, e.g., Louisiana State Mineral Board v. Albarado, 248 La. 551, 180 So.2d 700 (1965); Duggan Machine Company v. Consolidated Well Service Company, 187 So.2d 124 (La.App. 2 Cir. 1966); Brooks v. Britnell, 183 So.2d 434 (La.App. 2 Cir. 1966).
This confusion is understandable, since both theories are creations of different legal systems seeking elimination of common evils. We will attempt to avoid this confusion by confining this examination to the relevant Civil Code provisions on quasi contracts. LSA-C.C. Arts. 2292, 2293, 2294, 2295 and 2299.[1]
Broussard, Ltd. has alleged that State Auto has relied on Broussard, Ltd.'s services, that State Auto has benefited from the undertaking, and that Broussard, Ltd. has rendered services and incurred certain unpaid expenses pursuant to this undertaking. These allegations state a cause of action based on quasi contract.
Attorney fees were allowed on a quantum meruit/quasi contractual basis in Louisiana State Mineral Board v. Albarado, supra. While Albarado and the Interstate Trust case, supra, are factually distinguished from the instant case, the cited cases stand for the proposition that an attorney may, under some circumstances, recover compensation for services rendered and expenses incurred from those who have benefited from his efforts.
Broussard, Ltd. should not be denied its opportunity to prove its entitlement to a fee, particularly where the Supreme Court has indicated that under certain circumstances such fees are allowable.
We do not find that Broussard, Ltd.'s admission that State Auto intervened in the original third party action, is fatal to its stated cause of action. To say that one has intervened does not necessarily mean that adequate steps were taken toward the *549 prosecution of its demand. It is alleged that State Auto merely intervened pursuant to its statutory authorization to proceed, and relied on Broussard, Ltd. to prosecute the claim, doing little or nothing towards the actual preparation and prosecution of State Auto's demand. Whether or not State Auto took substantial steps towards acquisition of its judgment is a crucial factor deserving a trial on the merits.
The trial court's judgment maintaining State Auto's exception of no cause of action is reversed, and the case is remanded for trial on the merits. Costs of this appeal are assessed to State Auto & Casualty Underwriters Company.
Reversed and remanded.
NOTES
[1] Art. 2292 Certain obligations are contracted without any agreement, either on the part of the person bound or of him in whose favor the obligation takes place.

Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses.
Art. 2293 Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
Art. 2294 All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due.
Art. 2295 When a man undertakes, of his own accord, to manage the affairs of another, whether the owner be acquainted with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it and to complete it, until the owner shall be in a condition to attend it to himself; he assumes also the payment of the expenses attending the business.
He incurs all the obligations which would result from an express agency with which he might have been invested by the proprietors.
Art. 2299 Equity obliges the owner, whose business has been well managed, to comply with the engagements contracted by the manager, in his name; to indemnify the manager in all the personal engagements he has contracted; and to reimburse him all useful and necessary expenses.